## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RASHAWN DAVID WILLIAMS,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:18-2446** |
| **v.** | : | **(JUDGE MANNION)** |
| **JUSTIN PRILISZH,** *et al.*, | : | |
| **Defendants** | : | |

### MEMORANDUM

### I. BACKGROUND

Plaintiff, Rashawn David Williams, an inmate currently confined at the Rockview State Correctional Institution ("SCI-Rockview"), Bellefonte, Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). The action proceeds via an amended complaint. (Doc. 29). The Plaintiff complains of events which occurred at his former place of confinement, the Lycoming County Prison. Id. The named Defendants are the Lycoming County Prison Board and the following Lycoming County Prison employees: Warden Brad Shoemaker, Deputy Warden Ryan Barnes, and Correctional Officer Justin Priliszh. Id. Plaintiff seeks compensatory and punitive damages for an incident that occurred on November 28, 2018, when

Defendant Priliszh allegedly used excessive force after Plaintiff struck his arm through his cell door food tray slot to prevent it from being closed. Id.

Presently before the Court are Defendants' motions to dismiss Plaintiff's amended complaint. (Docs. 30, 51). The motions are fully briefed and are ripe for disposition. For the reasons that follow, the Court will grant Defendants' motions to dismiss.

## II. ALLEGATIONS IN AMENDED COMPLAINT

Plaintiff's amended complaint (Doc. 29), in conjunction with Plaintiff's sworn affidavit[1] (Doc. 1) reveals the following:

> On November 28, 2018, at 4:20-4:35 I was housed as a pre-trial detainee in Lycoming County MSMU cell #66. During this time prison guard Justin Priliszh was passing out food trays. Justin Priliszh came to my cell and opened the food slot. At that time I noticed he didn't have any gloves on which is unsanitary because he is passing food out. I asked this prison guard to put gloves on. This prison guard then ask me do I want food I say yes but not until you put gloves on. So this prison guard trys (sic) to deny me my food and trys (sic) to close the food slot so I stick my arm out the food slot and grab the door handle (the MSMU is a very secure housing unit the only way the doors can be open is from

---

[1] In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

a control panel) so he can't close it or deny me my food. At this time I tell prison guard Priliszh to call the supervisor. At first he denys (sic) my request then I ask prison guard Priliszh to call the supervisor a second time he does. In the time the supervisor is coming Priliszh is bending my hand arm and wrist (I am not a threat because I am behind a locked door). Prison guard Priliszh was using excessive force. This guard was acing maliciously when slammed my wrist in the food slot. Priliszh was causing me pain and suffering because he chose to ignore my please (sic) for him to stop. He just kept applying more pressure to my wrist.

Plaintiff screamed and yelled in excessive pain from the pressure of metal/steel iron door food slot aperture that pinched the nerves and bones in the left wrist while pleading with Defendant Priliszh to stop.

Defendant Priliszh cursed and laughed at Plaintiff while inmate Lamont Cradle in Cell #67 and inmate Omar Smith in cell #74 screamed repeatedly for Defendant Priliszh to stop because Plaintiff Williams was not resisting and was being hurt and Defendant Priliszh cursed at them to mind their business or they would be next.

Plaintiff from the November 29, 2018 assault and battery by Defendant Priliszh injury to left limb included bruised skin, broken open with cuts, abrasions, contusions, pain and numbness with discoloration and swelling and inability to squeeze left hand closed.

Plaintiff Williams continued to tell medical staff about numbness of the nerve in the left limb from November 29, 2018 through December 16, 2018 but medical staff would simply tell Plaintiff Williams you're ok.

Plaintiff used the inmate grievance system which is done by computer internally to make Defendant Warden Shoemaker and Deputy Warden Barnes aware, knowledgeable, informed of excessive unnecessary force by Defendant Priliszh.

- 3 -

Defendant Barnes denied grievance of Plaintiff and then Defendant Shoemaker denied grievance appeal of Plaintiff on December 12, 2018.

Plaintiff appealed to the 3rd level of the grievance appeals to the Prison Board of Lycoming County but there never was any response to the computer appeal from Lycoming County Prison Board.

Defendant Shoemaker and Barnes and Lycoming County Prison Board were directly involved in failure to train in de-escalation training Defendant Priliszh which contributed to the failure to protect Plaintiff from harm and injury by Defendant Priliszh.

Defendants Shoemaker and Barnes and Lycoming County Prison Board are responsible and legally liable for after being made aware of Defendant Priliszh's action, the failure to take corrective measures to adequately investigate and discipline.

(Doc. 29, Amended Complaint and Doc. 1, Affidavit of Rashawn Williams). Thus, Plaintiff filed the instant action seeking compensatory and punitive damages as well as injunctive relief, "enjoining his return to Lycoming County Prison". Id.

## III. LEGAL STANDARDS

### A. Motion to Dismiss

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to

relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the

elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of *pro se* prisoner litigation, the court must be mindful that a document filed *pro se* is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support

of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### B. Section 1983 Standard

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. §1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## IV. Discussion

As a threshold matter, Plaintiff was a pretrial detainee at the time of the incident, as such, his excessive use of force claim would be treated as a due process claim under the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535–539 (1979) (holding that the Due Process Clause of the Fourteenth Amendment protects a pretrial detainee from the use of excessive force that amounts to punishment). If, however, Plaintiff was not a pretrial detainee but was, rather, a convicted and sentenced inmate awaiting transfer to a state correctional institution, his excessive use of force claim would be governed by the Eighth Amendment. See Whitley v. Albers, 475 U.S. 312, 327 (1986). Nonetheless, as a practical matter, the Third Circuit has determined that a §1983 excessive use of force claim brought by a pretrial detainee under the Fourteenth Amendment Due Process Clause should be analyzed under the same standard as an excessive use of force claim brought under the Eighth Amendment. Fuentes v. Wagner, 206 F.3d 335, 346-47 (3d Cir. 2000). Thus, Plaintiff's Fourteenth Amendment claim is essentially subsumed by his Eighth Amendment claim in any event.

### A. **Excessive Force Claim**

The cruel and unusual punishment clause of the Eighth Amendment protects inmates against the application of excessive force by correctional officers. See Whitley v. Albers, 475 U.S. 312, 318–19 (1986). In an excessive force claim, the core judicial inquiry is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Wilkins v. Gaddy, 559 U.S. 34 (2010). In applying this test, courts are tasked with considering the following factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. Id.

The reasonableness of a particular use of force is often dependent upon the relevant factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396-97 (1989); see also Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir. 2000) ("[E]ven if we concede [that an inmate] has established at most that prison officials overreacted to

the disturbance that he caused . . . any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'"). Additionally, *de minimis* use of physical force does not qualify as excessive force unless the force is "repugnant to the conscience of mankind." Brooks v. Kyler, 204 F.3d 102, 107 (3d Cir. 2000) (citing Hudson, 503 U.S. at 6); see also Wilkins, 559 U.S. 34 (clarifying that *de minimis* force, rather than *de minimis* injury, is the dispositive issue). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. To that end, when "it appears that the evidence, viewed in the light most favorable to the plaintiff, will [not] support a reliable inference of wantonness in the infliction of pain," summary judgment is appropriate. Brooks, 204 F.3d at 106 (quoting Whitley, 475 U.S. at 322).

Conversely, "when prison officials maliciously and sadistically use force to cause harm…contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. 1).

Additionally, in the context of prison excessive force claims, in determining "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," Hudson, 503 U.S. at 6–7, "even if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused ..., any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm'." Fuentes, 206 F.3d 346.

Finally, courts considering Eighth Amendment excessive force claims have generally held that an isolated, single incident does not amount to a constitutional violation. See e.g., Norman v. Taylor, 25 F.3d 1259, 1262–64 (4th Cir.1994); White v. Holmes, 21 F.3d 277, 280–281 (8th Cir.1994); Black Spotted Horse v. Else, 767 F.2d 516 (8th Cir.1985); Ricketts v. Derello, 574 F.Supp. 645 (E.D.Pa.1983).

It is clear, in analyzing the case law above in relation to the instant wicket closing incident, that Plaintiff's own allegations fail to prove the elements necessary to raise an Eighth Amendment claim of Excessive Force. Here, Plaintiff admits that he intentionally shoved his arm out of the food tray slot and was reaching for the outside door handle in order to prevent Defendant Priliszh from closing the slot. Thus, it was not

unreasonable for Defendant Priliszh to attempt to gain control of the situation by manipulating Plaintiff's arm as necessary to try and close the slot.  Plaintiff then claims that defendant Priliszh bent Plaintiff's wrist and hand, applied pressure against plaintiff's requests for defendant to stop, and "slammed" plaintiff's wrist in the food slot. As a result, plaintiff claims he suffered bruised skin, cuts, abrasions, contusions, pain and numbness with discoloration and swelling, and that he now has numbness in his arm.

As the Hudson Court stated, this type of force of closing a wicket is not of the "sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9–10.  See also Caldwell v. Luzerne County Correctional Facility Management, 732 F. Supp.2d 458, 469 (M.D. Pa. 2010) (summary judgment granted where the Corrections Officer initiated violence by punching, pushing, spitting, verbally abusing, and using racial slurs against the Plaintiff amounted to only *de minimus* force at best). There is nothing unreasonable about a guard physically responding to an inmate who has created a security breach within a special management unit. See Hall v. Koehn, 2012 WL 3011784 (M.D. Pa. 2012) (finding that guard who slammed inmate's hand in open wicket did not use excessive force, where inmate was holding wicket open in contravention of institutional rules).

Thus, the Court finds that this that an isolated, single incident does not amount to a constitutional violation. <u>See</u>, <u>e.g.</u>, Lloyd v. MacNeish, 2015 WL 1391476 (E.D.N.C. 2015) (no excessive force found where guards forcibly stopped inmate from having hands in a food tray slot); Minnis v. Pittman, 2018 WL 3974112 (M.D. Fla. 2018) (inmate's claim that guard slammed a food tray flap on his hand did not rise to the level of excessive force); Watkins v. Evans, 1996 WL 499094 (6th Cir. 1996)(guard's use of force to stop inmate from sticking arm out of food tray slot was a reasonable response to "admitted intransigence," and not excessive force); Kelly v. Jones, 2017 WL 2676422 (M.D. Ga. 2017) (even if true that the guard had intentionally slammed food tray slot flap onto inmate's hand and locked the flap with inmate's pinky caught in the flap, such force would not be excessive); Johnson v. Moody, 206 F. App'x. 880, 884 (11th Cir. 2006) (guard who kicked a food tray slot flap which broke an inmate's finger did not use excessive force); Brockington v. Stanco, 2016 WL 4443204 (M.D. Ga. 2016) (inmate's refusal to take his arm out of food tray slot constituted a disturbance requiring the use of force); Moss v. Brown, 2012 WL 1033475 (N.D. Tex. 2012) ("A prisoner does not have the right to refuse to comply with orders and then claim that actions taken in response to his refusal were

maliciously done."). Accordingly, Defendant Priliszh's motion to dismiss will be granted.

## B. Personal Involvement

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under §1983 cannot be premised on a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

- 14 -

Rode, 845 F.2d at 1207.

Inmates also do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")). Consequently, any attempt by Plaintiff to establish liability against a defendant solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for §1983 liability); Prvor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

With respect to Defendants Warden Shoemaker, Deputy Warden Barnes and Lycoming County Prison Board, the amended complaint alleges that these Defendants denied Plaintiff's grievances or appeals or failed to act on his appeal, although they were aware of the November 28, 2018 incident, they did not take actions to correct, adequately investigate or discipline.

Based on those vague assertions and the record which reveals the only involvement of these Defendants were through their involvement with Plaintiff's grievances, it is apparent that Plaintiff is attempting to establish liability against these Defendants based upon either their respective supervisory capacities or their review of his institutional grievances. Pursuant to the above discussion, either approach is insufficient for establishing civil rights liability against those Defendants and they are entitled to judgment as a matter of law.

Finally, to the extent that Plaintiff alleges that Defendants endorse a custom or policy approving forceful, punitive, and violent actions towards inmates, this claim simply falls woefully short of the applicable legal standard for vicarious liability in the constitutional arena.

After Monell v. Department of Social Services of the City of New York, "a local government may not be sued under §1983 for an injury inflicted solely by its employees or agents. . . [instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983." 436 U.S. 658, 694 (1978). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident

includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985). "Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved." Id.

The policy requirement set forth in Monell stems from the fact that a governmental entity "is not liable under the doctrine of respondeat superior" for constitutional claims. Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). As the Beck court elaborated, a government policy or custom under Monell must be proven in one of two ways:

> Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law.

Id. at 971 (internal citations and quotation marks omitted).

Accordingly, "[s]ingular disputes between parties who may have shared a rocky relationship in the past is not enough to satisfy the Monell's policy requirement, which serves 'as a means of determining which acts by municipal employees are properly attributed to the municipality'." Anything to Rent Lease Wholesale, Inc. v. Hughesville Borough, No. 4:16-CV-00895, 2017 WL 736859, at *6 (M.D. Pa. Feb. 24, 2017) (quoting City of St. Louis v.

Praprotnik, 485 U.S. 112, 139 n.3 (1988)). <u>See</u>, <u>e.g.</u>, Tuttle, 471 U.S. at 824, 105 S.Ct. 2427 ("But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation.") (internal footnote omitted). Thus, Plaintiff's claim of alleged unlawful conduct based on one occasion fails as a matter of law.

## C. <u>Verbal Harassment</u>

It has been recognized that the use of words generally cannot constitute a constitutional violation. Johnson v. Glick, 481 F.2d 1028, 1033 n. 7 (2d Cir. 1973); Maclean v. Secor, 876 F.Supp. 695, 698–99 (E.D.Pa. 1995); Murray v. Woodburn, 809 F.Supp. 383, 384 (E.D.Pa. 1993) ("Mean harassment ... is insufficient to state a constitutional deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F.Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under §1983."). Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. Fisher v. Woodson, 373 F.Supp. 970, 973 (E.D.Va. 1973); <u>see</u> <u>also</u> Balliet v. Whitmire, 626 F.Supp. 219, 228–29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation ..."), aff'd, 800 F.2d 1130 (3d Cir. 1986). A constitutional claim based only on verbal

threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, or under the Fifth Amendment's substantive due process clause. See Prisoners' Legal Ass'n, 822 F.Supp. at 189; Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991).

Verbal harassment or threats, with some reinforcing act accompanying them, however, may state a constitutional claim. For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words. See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F.Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife). It has also been found that verbal harassment can rise to a constitutional level in a situation where fulfillment of the threat was conditioned on the inmate's exercising some constitutionally protected right. Bieros v. Nicola, 860 F.Supp. 226, 233 (E.D.Pa. 1994); see also Prisoners' Legal Ass'n, 822 F.Supp. at 189; Murray, 809 F.Supp. at 384.

Therefore, based on the foregoing, Plaintiff's allegation that Plaintiff Priliszh "cursed" at Plaintiff and other inmates, does not rise to the level of a viable civil rights claim. See Hart v. Whalen, 2008 WL 4107651, *10 (M.D.Pa. 2008).

### D. **Injunctive Relief**

Plaintiff seeks to be enjoined from ever returning to Lycoming County Prison. (Doc. 29). Plaintiff, however, is incarcerated at SCI-Rockview as a result of his December 17, 2018 sentence to life in prison for a criminal homicide conviction. See Commonwealth v. Williams, CP-41-1442-2017. Plaintiff has plead no facts indicating that he may return to Lycoming County Prison. Thus, his request for injunctive relief is moot.

The mootness doctrine recognizes that "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996). An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims. Abdul-Akbar v. Watson, 4 F.3d 195, 206-07 (3d Cir. 1993); see Griffin v. Beard, 401 F. App'x 715 (3d Cir. 2010) (transfer from SCI-Huntingdon renders inmate injunctive relief claim moot). Thus, Plaintiff's request for injunctive relief must be dismissed.

## V. LEAVE TO AMEND

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962). The Court may deny a motion to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id. The Court must also determine whether a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim upon which relief may be granted. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

In the instant case, the Court concludes that it would be futile to permit Plaintiff to file a second amended complaint because he has already been

- 21 -

granted an opportunity to cure the deficiencies identified in his initial complaint and his amended complaint failed to cure such deficiencies. See Jones v. Unknown DOC Bus Driver & Transp. Crew, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that when an inmate-plaintiff "has already had two chances to tell his story ... giving him further leave to amend would be futile").

Thus, the Court will dismiss the Plaintiff's §1983 claims without leave to amend.

## VI. CONCLUSION

For the reasons set forth above, the Court will grant Defendants' motions to dismiss. (Docs. 30, 51).

A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 16, 2022**
18-2446-01

- 22 -